UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO LEO MILLETE and JUDITH I MILLETE,<br><br>Plaintiffs,<br><br>v.<br><br>CHULA VISTA POLICE DEPARTMENT; CITY OF CHULA VISTA; and DOES 1-100,<br><br>Defendants. | Case No.: 22-cv-1343-WQH-BJC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' Third Amended Complaint and Claims Therein Under Rule 12(b)(6) and Motion to Strike Portions of Plaintiffs' First Amended Complaint Under Rule 12(f) ("Motion to Dismiss") (ECF No. 31) filed by Defendants Chula Vista Police Department ("CVPD") and City of Chula Vista ("City").

## I. BACKGROUND

On May 6, 2022, Plaintiffs filed a Complaint against Defendants CVPD, City, and Does 1–100 in the Superior Court of California, County of San Diego. (*See* Exh. 1 to Notice of Removal, ECF No. 1-2.) On September 7, 2022, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441. (ECF No. 1 at 3–4.)

On October 24, 2022, Defendants filed a motion to dismiss. (ECF No. 9.) On March 28, 2023, the Court granted in part and denied in part the motion to dismiss, dismissing without prejudice the federal claims and declining supplemental jurisdiction over the state law claims. (ECF No. 12 at 10.)

On May 19, 2023, the Court granted Plaintiffs leave to amend. (ECF No. 15.) On June 22, 2023, Plaintiffs filed the Second Amended Complaint. (ECF No. 16.) On July 24, 2023, Defendants filed a motion to dismiss (ECF No. 17.) On October 2, 2023, the Court granted in part and denied in part the motion to dismiss, dismissing without prejudice the federal claims and declining supplemental jurisdiction over the state law claims.

On January 2, 2024, the Court granted Plaintiffs leave to amend. (ECF No. 29.) On January 16, 2024, Plaintiffs filed the Third Amended Complaint ("TAC"), the operative complaint. (ECF No. 30.) On January 30, 2024, Defendants filed the Motion to Dismiss. (ECF No. 31.) On February 15, 2024, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 32.) On February 23, 2024, Defendants filed a Reply in support of the Motion to Dismiss. (ECF No. 33.)

## II.   ALLEGATIONS IN THIRD AMENDED COMPLAINT

On May 7, 2021, July 1, 2021, and October 19, 2021, CVPD police officers "forcefully" entered Plaintiffs' home "with loaded guns, armed, [and] wearing bullet proof vests." (ECF No. 30 at 5.) Police officers Does 1–10 "stated they were looking for Larry Millete's guns, which were all kept in a safe and were not a harm or danger to anyone." *Id.* The police officers searched Plaintiffs' home and seized Plaintiffs' property, which included "money, jewelry, valuable coins[, ] numerous sexual tapes of [P]laintiffs' son and his wife," and "firearms, [a] Lexus, and [a] Jeep[,] among others." *Id.* CVPD police officers did not provide Plaintiffs with a list of the personal property seized during the searches.

On May 7, 2021, CVPD police officers entered Plaintiffs' home and "broke the door to the grandchildren's bedroom and did not wait for Plaintiffs to give them a key to the door," and "forced their way" into the grandchildren's bedroom "pointing their guns at them." *Id.* Plaintiffs' grandchildren "were in shock and terror." *Id.* The police officers'

conduct towards Plaintiffs "was a result of the failure [of] the defendants to train, and or supervise, because it was patently obvious that the violation of constitutional rights was likely…." *Id.* CVPD police officers detained Plaintiffs and their three grandchildren, ages 5, 9, 11, in the kitchen and then the back yard and "did not allow them to bring food or water, or use the toilet." *Id.* at 5-6. Plaintiffs and their grandchildren were in the backyard for approximately two hours, whereby "[n]eighbors and the media and others were staring at [P]laintiffs and their grandchildren." *Id.* at 6.

On July 1, 2021, CVPD police officers knocked on Plaintiffs' door. Plaintiff Benito Leo Millette opened the door and "there were many and various law enforcement officers outside including [CVPD] police, Homeland security, FBI[,] and NCIS." *Id.* Plaintiff Benito Leo Millette "asked for a search warrant, and John Doe told" him to read it. *Id.* "Plaintiff Benito Leo politely asked if he could get his reading glasses." *Id.* "A John Doe police officer followed Plaintiff Benito Leo, pushed him[,] and yelled at [him] to show him his hands." *Id.* "Plaintiff Benito Leo fell, and … a [City] police officer was pointing a gun at him (Benito) in the presence of his wife Plaintiff Judith." *Id.* The police officers' search warrant "was for electronics, and they took all cellphones, iPads, computers, all electronics including [P]laintiff Benito Leo's heart monitor that tracks any irregularities with his heart and dispatched emergency medical services" if needed. *Id.* at 7. "The defendants put Benito's life in danger by taking his heart monitor away and taking everyone's cellphones. They had no means to contact an ambulance." *Id.* CVPD police officers broke bedroom doors and walls and left Plaintiffs' home "in a chaotic and disturbing state." *Id.*

On September 17, 2021, at approximately 9:00 a.m., CVPD police officers took custody of Plaintiffs' three grandchildren from their elementary schools. The officers did not return the grandchildren to Plaintiffs until 5:30 p.m. The CVPD officers "unlawfully detained" Plaintiffs' grandchildren and violated their "right to a public education" and "right to use public facilities." *Id.*

On October 19, 2021, at around 11:30 a.m., while Plaintiffs were driving to pick up their grandson from elementary school, Plaintiffs were stopped by more than six vehicles.

|   |   |
|---|---|
| 1 | Approximately "fifteen heavily armed officers wearing U.S. Marshal vests got out of the |
| 2 | car and approached" Plaintiffs. *Id.* at 8. Plaintiff Benito Leo Millette "asked why they were |
| 3 | stopped, and [the officers] told [P]laintiffs it was for an investigation." *Id.* Plaintiffs were |
| 4 | informed that the officers were from the "U.S. Marshalls, FBI, [] NCIS[,] and Homeland |
| 5 | Security," in addition to the CVPD. *Id.* at 9. CVPD police officers John Doe 5 and John |
| 6 | Doe 6 approached Plaintiffs, asked them to exit their vehicles, patted them down, and |
| 7 | searched their vehicle. Plaintiff Benito Leo Millette informed the officers that he needed |
| 8 | to pick up his grandson from school, and the officers permitted Plaintiffs to do so but |
| 9 | Plaintiffs "had to go with them to the police station right afterwards." *Id.* "Detective |
| 10 | Rosario informed Plaintiffs that their son Larry Millete was arrested and that Plaintiffs |
| 11 | could not go home because there [was] an ongoing search at their house." *Id.* "Plaintiffs |
| 12 | and the grandchildren went to the [CVPD] police station and stayed there as they waited |
| 13 | for the police to search their house." *Id.* "Detective Jesse Vincente did not call Plaintiffs to |
| 14 | let them know that they could go back [to their house] until past midnight." *Id.* When |
| 15 | Plaintiffs returned home, they found the house in "complete disarray." *Id.* |
| 16 | "Every time the house [was] searched doors and locks were broken, everything [was] |
| 17 | completely left opened, disorganized, completely trashed." *Id.* "There exists no probable |
| 18 | cause for these searches since the CVPD stated that there were no suspects and there was |
| 19 | no evidence of criminal activity at the time." *Id.* at 8. |
| 20 | Plaintiffs bring claims under 42 U.S.C. § 1983 against "police officers of [CVPD] |
| 21 | who unlawfully violated [Plaintiffs'] constitutional right[s], assaulted and harassed" them |
| 22 | and "the Police Chief of the City of Chula Vista as the supervisory officer responsible for |
| 23 | the conduct of the Defendants and for their failure to take corrective action with respect to |
| 24 | police personnel whose vicious actions and propensities were notorious, or failed to |
| 25 | implement meaningful procedures to discourage lawless official conduct." *Id.* at 3. As a |
| 26 | result of Defendants' conduct, Plaintiffs "suffered humiliation, severe mental distress, |
| 27 | insomnia, loss of privacy, and violation of constitutional rights and freedom, anxiety, and |
| 28 |   |

emotional anguish, together with loss of monies, attorney fees, inconveniences, and extraordinary expenses." *Id.*

## III. MOTION TO DISMISS

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

/ / /

/ / /

B.  Discussion

Defendants move to dismiss Plaintiffs' TAC on the following grounds: Plaintiffs fail to properly allege a basis for municipal liability under 42 U.S.C. § 1983; Plaintiffs fail to state a valid claim under § 1983 for Fourth, Fifth, Eighth, and Fourteenth Amendment violations; and Plaintiffs have not sufficiently asserted any claim against the Doe Defendants in their individual capacity. Defendants also request that the Court strike the allegations in the TAC related to Plaintiffs' grandchildren because they are not parties.

Plaintiffs contend that they have satisfied the "requirements for a successful lawsuit under section 1983."[1] (ECF No. 32 at 3.) Plaintiffs contend that they have sufficiently alleged in the TAC "the existence of a pattern of constitutional violations by the police officers … because the police officers were not properly trained or supervised." *Id.* at 4. Plaintiffs assert that "[o]n information and belief, [D]efendants Police Officers and [City] had prior notice of the vicious propensities of the [D]efendant Police Officers and Does, but took no steps to train them, correct their abuse of authority, or to discharge their unlawful use of authority." *Id.* at 6.

1.  Municipal Liability Under 42 U.S.C. § 1983

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see* 42 U.S.C. § 1983 (providing a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation

---

[1] In their Response, Plaintiffs "request that the Court take judicial notice of amended complaints of record." (ECF No. 32 at 4.) "[T]he general rule is that an amended complaint supercedes the original complaint and renders it without legal effect." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Although there is an exception to this general rule "[f]or claims dismissed with prejudice and without leave to amend," which are "not require[d] [to] be repled in a subsequent amended complaint to preserve them for appeal," *id.* at 928, this exception does not apply here because no claims in the prior complaints were dismissed with prejudice and without leave to amend. Accordingly, the prior complaints have no legal effect and the Court declines to consider them in ruling on the Motion to Dismiss the TAC.

of any rights, privileges, or immunities secured by the Constitution and laws...."). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotations and citations omitted). A government entity may not be held vicariously liable for the unconstitutional acts of its employees under a theory of respondeat superior in a § 1983 claim. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Plaintiffs cannot allege a widespread practice or custom based on 'isolated or sporadic incidents; [liability] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

The TAC alleges claims against CVPD, City, and Doe Defendants. The allegations in the TAC concerning a policy, practice, or custom are entirely conclusory. The nonconclusory allegations in the TAC concern three searches of Plaintiffs' house and a traffic stop, but the TAC lacks nonconclusory allegations indicating that the alleged CVPD officer behaviors during these events were part of a "policy, practice, or custom" that was "so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino*, 99 F.3d at 918 (citation omitted). A custom alleged to support a claim for *Monell* liability "must be so 'persistent' that it constitutes 'permanent and well settled city policy'" and liability cannot be "predicated on isolated or sporadic incidents." *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). In considering Plaintiffs' nonconclusory

allegations, the TAC's factual allegations consist of no more than "isolated or sporadic incidents." *Id.*

In "limited circumstances," the failure to train municipal employees can serve as the basis for *Monell* liability under § 1983. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). The plaintiff must show that the city had a training policy that "amounts to deliberate indifference" to the rights of the persons with whom the untrained employees are likely to come into contact with and that the injury would have been avoided if the city properly trained its employees. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)). While Plaintiffs contend in their Response that City, CVPD, and the Doe Defendants are liable under a failure to train theory, Plaintiffs have not adequately alleged in the TAC any training policy that "amounts to deliberate indifference." *Id.* Nor have Plaintiffs alleged in the TAC that the individual CVPD officers' "conduct conformed to official policy, custom or practice." *Lee*, 250 F.3d at 682–83 (quotations and citation omitted). Plaintiffs fail to assert nonconclusory allegations in the TAC that a CVPD and/or City policy, practice, or custom or failure to train was the moving force behind Plaintiffs' alleged constitutional injury. The TAC alleges in conclusory fashion that the "Police Chief of the City of Chula Vista" was "responsible for the conduct of the Defendants and for their failure to take corrective action with respect to police personnel whose vicious actions and propensities were notorious, or failed to implement meaningful procedures to discourage lawless official conduct." (ECF No. 30 at 3.) These allegations are insufficient to plausibly allege that "a final policymaker had knowledge (actual or constructive)" of the alleged constitutional violations by the individual CVPD officers and "sanctioned" or ratified those actions. *Sabra*, 44 F.4th at 885.

The TAC's allegations are insufficient to adequately allege a § 1983 claim for municipal liability against CVPD and City. The Motion to Dismiss the TAC's claims against CVPD and City is granted.

/ / /

### 2. Individual Defendant Liability Under 42 U.S.C. § 1983

To state a claim against an individual defendant under § 1983, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (citation omitted). A plaintiff bringing an individual capacity claim under § 1983 must demonstrate that each defendant personally participated in the deprivation of his rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see also Bonviert v. City of Clarkson*, 883 F.3d 865, 879 (9th Cir. 2018) ("An officer can be held liable for a constitutional violation only where there is a showing of 'integral participation' or 'personal involvement' in the unlawful conduct, as opposed to mere presence at the scene."); *Blankenhorn*, 485 F.3d at 481 n.12 ("An officers' liability under section 1983 is predicated on his 'integral participation' in the alleged violation.... 'Integral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation…. But it does require some fundamental involvement in the conduct that allegedly caused the violation." (citations and quotations omitted)). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Leer*, 844 F.2d at 633 (alteration in original) (emphasis omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Plaintiffs allege § 1983 causes of action for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments.[2]

///

---

[2] In their Response, Plaintiffs discuss § 1983 violations under the First Amendment. Plaintiffs do not bring such claims in the TAC, and because the TAC is the operative complaint, any claims raised in the prior complaints have been dismissed. The Court does not consider any new claims raised in opposition to a motion to dismiss.

### a. Fourth Amendment Claim Against the Individual Defendants

Plaintiffs bring their Fourth Amendment claim for unlawful detention and excessive force. (ECF No. 30 at 4.) The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. "A detention can be unreasonable 'either because the detention itself is improper or because it is carried out in an unreasonable manner.'" *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). The court "must determine reasonableness from the perspective of a reasonable officer on the scene." *Id.* (quoting *Graham*, 490 U.S. at 396). "Under the Fourth Amendment, 'a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.'" *Id.* (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). However, "special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case." *Id.* (quoting *Michigan*, 452 U.S. at 705 n.1). For example, "search-related detentions that are 'unnecessarily painful [or] degrading' and 'lengthy detentions[ ] of the elderly, or of children, or of individuals suffering from a serious illness or disability raise additional concerns.'" *Id.* (quoting *Foxworth*, 31 F.3d at 876) (alterations in original). A seizure must be "'carefully tailored' to the law enforcement interests that … justify detention while a search warrant is being executed." *Id.* (quoting *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Cir. 2003)). "The presence of a search warrant serves a high function…, and that high function is not necessarily vindicated when some other document, somewhere says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." *Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (quotations and citation omitted). "It is established that a warrant to search a home 'implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.'" *Sharp v. Cnty. of Orange*, 871 F.3d 901, 913 (9th Cir. 2017) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). However, "this exception … is 'limited to the immediate vicinity of the premises' in question." *Id*. (quoting *Bailey v. United States*,

568 U.S. 186, 204 (2013) (finding the *Summers* exception inapplicable because the occupant was detained a mile away from the home and thus was not within the immediate vicinity of the searched premises)).

As to conduct during the searches, the Court of Appeals for the Ninth Circuit has held that "the destruction of property during a search does not necessarily violate the Fourth Amendment," however, "unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (citations and quotations omitted); *see also Denby v. Engstrom*, No. 20-16319, 2021 WL 2885846, at *2 (9th Cir. July 9, 2021) ("To assess the reasonableness of a search authorized by a warrant, we examine whether the degree of intrusion matched the underlying purpose of the intrusion…. We have held that individuals have a Fourth Amendment right to be free of unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively." (quotation omitted)).

Claims for excessive force are evaluated in three stages. "First, [courts] assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (quotation omitted). "Then, [courts] evaluate the government's interests by assessing the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or attempting to escape." *Id*. "Finally, [courts] balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.* (citing, *inter alia*, *Graham*, 490 U.S. at 396-97). "[I]n the context of a residential confrontation, … 'pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force.'" *Id*. (quoting *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010)). However, "[i]n executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 614 (2007).

The TAC alleges that the CVPD officers who are alleged to be Doe Defendants obtained a search warrant for one of the three alleged searches. (ECF No. 30 at 6-7.) The TAC alleges that the Doe Defendants seized Plaintiff Benito Leo Millette's heart monitor, "which was not included in the search warrant." *Id*. at 7. Read in the light most favorable to Plaintiffs, the TAC also adequately alleges that the Doe Defendants acted unreasonably in executing the searches by unnecessarily pushing unarmed, "senior citizen" Plaintiff Benito Leo Millette to the ground and pointing a gun at him, repeatedly breaking doors, locks, and walls in Plaintiffs' residence, and otherwise repeatedly "trash[ing]" Plaintiffs' residence. *Id*. at 5-7, 9. The TAC alleges that the CVPD officers "failed to provide Plaintiffs with a list of their personal properties seized during all the searches." *Id*. at 5. The TAC also plausibly alleges that, on October 19, 2021, Doe Defendant officers detained Plaintiffs at a police station for approximately 12 hours while officers conducted a search of Plaintiffs' residence. *Id*. at 8-9.

Based upon the allegations in the TAC and the legal standards discussed above, the Court finds that Plaintiffs adequately allege § 1983 claims for violation of the Fourth Amendment against the Doe Defendants who were police officers conducting the searches and detaining Plaintiffs for 12 hours in a police station while a search was conducted at Plaintiffs' home. However, the TAC alleges that "John Doe 3 was the duly appointed Chief of Police of the Chula Vista Police Department." (ECF No. 30 at 2.) The TAC fails to adequately allege that the Chief of the CVPD had any personal involvement in the searches or detentions at issue. And as discussed above, the TAC fails to adequately allege that the Police Chief ratified the conduct of the officers who were involved or otherwise is plausibly liable under § 1983. Accordingly, the Motion to Dismiss Doe Defendant number 3, the Chief of the CVPD, is granted.

Defendants request that the Court dismiss all other Doe Defendants on the basis that the TAC fails to identify the Doe Defendants or adequately allege the involvement of each Doe Defendant. "Although '[a]s a general rule, the use of "John Doe" to identify a defendant is not favored,' in circumstances 'where the identity of alleged defendants will

not be known prior to the filing of a complaint ... the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Soo Park v. Thompson*, 851 F.3d 910, 928 n.21 (9th Cir. 2017) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980)). Here, Plaintiffs have not yet been afforded the opportunity to conduct discovery to identify the police officers who conducted the searches and took the actions alleged in the TAC. Accordingly, the Court finds that dismissing the claims against all Doe Defendants on this basis would be premature at this time. *See id.*; *cf. Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("*Gillespie* demonstrates that the district court erred in dismissing Wakefield's complaint against Doe simply because Wakefield was not aware of Doe's identity at the time he filed his complaint."). However, Plaintiffs are cautioned that Plaintiffs are required to expeditiously identify the Doe Defendants and move to amend the TAC to properly name those Defendants and adequately allege the personal participation of each named Defendant in the alleged Fourth Amendment violations. Although counsel for CVPD and City have not entered a formal appearance on behalf of any Doe Defendant, the Motion to Dismiss requests dismissal and makes legal arguments on behalf of the Doe Defendants. The Court orders CVPD and City, and their counsel, to cooperate with all appropriate discovery requests from Plaintiffs aimed at identifying the Doe Defendants who are alleged to have been employed by CVPD and City.

The Motion to Dismiss the Fourth Amendment claim against Doe Defendant number 3, the Chief of the CVPD, is granted. The Motion to Dismiss the Fourth Amendment claim against the other Doe Defendants is denied.

### b. Fifth Amendment Claim

Plaintiffs assert their Fifth Amendment claim pursuant to § 1983. Section 1983 is a statutory vehicle that allows plaintiffs to assert claims against state actors. By contrast, the Fifth Amendment is not a proper constitutional amendment through which to assert a due process claim against state actors. *See Lee*, 250 F.3d at 687 ("The Due Process Clause of

the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments."); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (holding that the defendant "is a local law enforcement official, and the Fifth Amendment's due process clause only applies to the federal government"). Accordingly, the Motion to Dismiss the Fifth Amendment claim is granted.

### c. Eighth Amendment Claim

The TAC contains a single reference to the Eighth Amendment: "The actions and omissions, engaged in under color of state authority by the Defendants, including City of Chula Vista, Chula Vista Police Department and Does 1 through 100, Inclusive, sued as a person, responsible because person, because Plaintiffs' fourth, fifth, eighth, and fourteenth amendment rights to due process of law, including the right to be free from unjustified and excessive force by the police." (ECF No. 30 at 4.) To the extent the TAC purports to assert a § 1983 claim for violation of the Eighth Amendment against any Defendant, "an Eighth Amendment claim … is reserved for 'those convicted of crimes' and therefore would not apply to pre-trial detainees." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). Plaintiffs have not alleged that they were prisoners convicted of a crime at the time of the alleged actions that form the basis of Plaintiffs' § 1983 claims. As discussed above, "a Fourth Amendment claim … applies … to those not yet convicted." *Id*. Accordingly, the Motion to Dismiss the Eighth Amendment claim is granted.

### d. Fourteenth Amendment Claim

The Fourteenth Amendment to the U.S. Constitution states:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The TAC alleges that "[t]he herein above-described actions and omissions, Police Officers were engaged in under color of state authority by the Defendants, … deprived the Plaintiffs of … their Fourteenth Amendment rights to due process of law, including the right to be free from unjustified and excessive force by police." (ECF No. 30 at 3.)

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quotation omitted). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. As discussed above, the TAC states a plausible claim under the Fourth Amendment against the Doe Defendants who participated in the challenged searches and seizures. Because Plaintiffs' claim "is 'covered by' the Fourth Amendment," an additional "[s]ubstantive due process analysis is therefore inappropriate." *Lewis*, 523 U.S. at 843. For this reason, the Motion to Dismiss the Fourteenth Amendment claim is granted.

### 3. Liability for Plaintiffs' Grandchildren's Injuries

The TAC contains many allegations pertaining to Defendants' alleged conduct towards Plaintiffs' grandchildren and the alleged injuries Plaintiffs' grandchildren suffered. However, Plaintiffs' grandchildren have not been named as parties to this suit, nor do Plaintiffs allege that they are bringing claims on behalf of their grandchildren—who are alleged to be minors—as guardians ad litem or duly appointed representatives. Plaintiffs are not permitted to assert claims based on their grandchildren's injuries or rights absent adequate allegations that Plaintiffs are legally authorized to represent their grandchildren or a motion requesting the Court appoint Plaintiffs as their grandchildren's guardians or legal representatives. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim

to relief on the legal rights or interests of third parties."); *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) ("[C]onstitutional rights are personal and may not be asserted vicariously."); *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("A minor may bring suit as long as a guardian conducts the proceedings.") (citing Cal. Fam. Code § 6601); *see also* Fed. R. Civ. P. 17(c)(2) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action."). To the extent the TAC purports to assert claims on behalf of Plaintiffs' grandchildren, the Motion to Dismiss those claims is granted, and those claims are dismissed without prejudice to replead the claims on behalf of the minors in a manner which complies with the applicable rules, including Federal Rule of Civil Procedure 17(c).

### 4.   Request to Strike

In the Motion to Dismiss, Defendants request that the Court strike the portions of the TAC containing allegations related to Plaintiffs' grandchildren, on the basis that "Plaintiffs lack standing to assert a claim for damages belonging to their grandchildren." (ECF No. 31-1 at 21.) Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court of Appeals for the Ninth Circuit has held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010). A Rule "12(f) motion [that is] really an attempt to have certain portions of [a] complaint dismissed or to obtain summary judgment … as to those portions of the suit" are "actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Id*. at 974. As discussed above, the Court has dismissed without prejudice the TAC to the extent it purports to assert claims on behalf of Plaintiffs' grandchildren. Accordingly, the request to strike portions of the TAC pursuant to Rule 12(f) is denied as moot.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 31) is granted in part and denied in part. Plaintiffs' claims against CVPD and City are dismissed without prejudice. Plaintiffs' § 1983 claims against the Doe Defendants for violations of the Fifth, Eighth, and Fourteenth Amendments are dismissed without prejudice. Plaintiffs' § 1983 claims against Doe Defendant number 3, who is alleged to be the Chief of the CVPD, is dismissed without prejudice. The Motion to Dismiss the Fourth Amendment claim against the other Doe Defendants is denied. To the extent the TAC purports to assert claims on behalf of Plaintiffs' grandchildren, the Motion to Dismiss those claims is granted, and those claims are dismissed without prejudice, as discussed above. The request to strike portions of the TAC pursuant to Rule 12(f) is denied.

Plaintiffs shall expeditiously identify the Doe Defendants and move to amend the TAC to properly name those Defendants and adequately allege the personal participation of each named Defendant in the alleged Fourth Amendment violations. CVPD and City, and their counsel, shall cooperate with all appropriate discovery requests from Plaintiffs aimed at identifying the Doe Defendants who are alleged to have been employed by CVPD and City. Plaintiffs are cautioned that if, after an opportunity to conduct discovery, Plaintiffs continue to fail to identify the Doe Defendants and adequately allege the personal participation of each named Defendant in the alleged legal violations, the TAC will be dismissed in its entirety. No later than sixty (60) days after the date this Order is filed, Plaintiffs shall either (a) file a motion for leave to amend the TAC, accompanied by a proposed amended complaint identifying the Doe Defendants, or (b) file a status report showing cause why Plaintiffs have failed to file a motion for leave to amend the TAC.

Dated: September 25, 2024

Hon. William Q. Hayes
United States District Court